**Koppel v. Case**

*Deborah D. Olszewski,* for plaintiffs Koppel.

*James R. Schadel,* for defendants Case, Mlakar, Celin and Metropolitan Ear, Nose and Throat Specialists.

*Robert A. Goldman,* for plaintiff McNeff.

*Regis M. McClelland,* for defendants Janicijevic, Medi-Help P.C., and CVS Pharmacy Inc.

WETTICK JR., *A.J.,* November 20, 2007—Both lawsuits raise the issue of whether a court, more than 30 days after the entry of a final judgment in a defendant's favor on a plaintiff's medical malpractice claim, may grant sanctions against an attorney pursuant to Pa.R.C.P. 1042.7 for improperly certifying that an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care, skill, or knowledge experienced or exhibited in the treatment, practice, or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm.

Rule 1042.7(a) provides that if a defendant against whom the plaintiff has filed a certificate of merit is dismissed from the case through voluntary dismissal, verdict, or order of court, the plaintiff, within 30 days of the written request of that defendant, shall provide him or her with the written statement obtained from the licensed professional upon which the certificate of merit as to that defendant was based. However, if a plaintiff's claims against other licensed professionals are still pending, the written statement shall be produced within 30 days of resolution of all claims against the other licensed professionals.

## I. *KOPPEL* LITIGATION

Plaintiffs' complaint included medical malpractice actions against Dr. Celin and his professional corporation (Metropolitan) based on Dr. Celin's alleged failure to detect plaintiff-wife's thyroid cancer. The complaint was filed on January 26, 2005, and certificates of merit signed by Peter J. Pietrandrea, counsel for plaintiffs, were filed on March 28, 2005.

On April 13, 2006, Dr. Celin and Metropolitan filed a motion for summary judgment based on a court order barring expert testimony because of plaintiffs' failure to furnish any expert reports. Unbeknownst to defendants, on April 12, 2006, Attorney Pietrandrea (counsel for plaintiffs) had filed a praecipe to discontinue as to all defendants.

On June 15, 2006, counsel for Celin/Metropolitan requested Attorney Pietrandrea to provide the written statement that supported the certificates of merit which he filed as to Dr. Celin and Metropolitan. On July 5, 2006, he provided a case study report prepared by Dr. Qin Eisler. Upon review of the report, Celin/Metropolitan filed a motion for sanctions. At oral argument on the motion, counsel for Attorney Pietrandrea raised the defense that this court may not grant relief pursuant to Rule 1042.7 because of the discontinuance. Counsel argued that the discontinuance on April 12, 2006 was a final judgment and a common pleas court may modify a final judgment only within 30 days after the entry of the final judgment.

In this litigation, Dr. Celin could not have sought sanctions pursuant to Rule 1042.7 until he was provided with

the written statement upon which Attorney Pietrandrea based the certificates of merit which he filed. Under Rule 1042.7(a), Dr. Celin was not entitled to the statement until 30 days of a written request by Dr. Celin to provide this statement. Dr. Celin could not make this written request until he was dismissed through a voluntary dismissal. A voluntary dismissal is a final judgment. Thus, if I were to accept the argument of counsel for Attorney Pietrandrea, sanctions could never be imposed pursuant to Rule 1042.7 in the situation in which a plaintiff voluntarily dismisses all claims.

Furthermore, there are numerous other situations, including the following, in which a plaintiff could avoid the imposition of sanctions pursuant to Rule 1042.7 if sanctions must be awarded within 30 days of the entry of the judgment:

Example 1—Pursuant to a motion for summary judgment filed by the only defendants in the case, a judgment is entered on August 11 dismissing the entire case as to each physician defendant. This judgment is a final judgment as of August 11 and the defendant could not have made the 30-day request to the plaintiff's attorney prior to the entry of the judgment on August 11. Example 2—A verdict is entered in favor of the defendants. The plaintiff files a motion for post-trial relief. Since a claim is not resolved while a motion for post-trial relief is pending, the request to provide the statement cannot be made until the entry of a court order denying the motion for post-trial relief.[1] As soon as the court denies the motion,

---

1. Possibly, the request could not be made until the expiration of the 30-day appeal period.

the plaintiff may file a praecipe for entry of judgment for the defendant.

The case law upon which Attorney Pietrandrea relies does not support his contention that sanctions cannot be awarded against him pursuant to Rule 1042.7. I agree with the statement that the voluntary dismissal entered on April 12, 2006 is a final judgment and that I can modify this judgment only within 30 days of its entry. However, the imposition of sanctions pursuant to Rule 1042.7 is not a modification of the April 12, 2006 judgment. Instead, the imposition of sanctions constitutes a resolution of a collateral matter that is not covered by the judgment.

Celin/Metropolitan's request for sanctions pursuant to Rule 1042.7 is governed by the recent opinion of the Pennsylvania Supreme Court in *Miller Electric Company v. DeWeese,* 589 Pa. 167, 907 A.2d 1051 (2006). Miller Electric had obtained a judgment against DeWeese. DeWeese was president of Birmingham Bistro Inc. Miller Electric instituted garnishment proceedings against Birmingham, asserting that it was entitled to attach property held by Birmingham and to garnish compensation and benefits paid by Birmingham to DeWeese. On February 14, 2002, the trial court entered a verdict in favor of Birmingham, finding that its assets were exempt from garnishment. The following day, Birmingham filed a motion for counsel fees, citing 42 Pa.C.S. §2503(3) which entitles a garnishee who is found to have in his or her possession or control no indebtedness due to or property of the defendant to collect reasonable counsel fees as part of the taxable costs of the matter.

On February 26, 2002, Miller filed a motion for post-trial relief. The trial court did not enter an order disposing of the motion within the 120-day period of Pa.R.C.P. 227.4 which states that a final judgment may be entered where a court does not within 120 days enter an order disposing of the motion. On June 27, 2002, the prothonotary entered a final judgment pursuant to a praecipe to enter judgment filed by Birmingham. Neither party filed an appeal from the entry of this judgment.

On July 10, 2002, the trial court entered an order denying Birmingham's February 15 motion for attorney fees. On August 8, 2002, Birmingham filed a notice of appeal from the July 10 order. Miller Electric moved to quash the appeal as untimely, arguing that the notice of appeal was filed more than 30 days after the final judgment entered on June 27, 2002. The Pennsylvania Superior Court granted Miller's motion and quashed the appeal. The Pennsylvania Supreme Court reversed.

The Supreme Court reviewed the Superior Court's reasoning. The Superior Court relied on 42 Pa.C.S. §5505 which provides that except as otherwise provided or prescribed by law, a court may modify or rescind any order within 30 days after its entry.[2] The Superior Court concluded that requests for counsel fees under 42 Pa.C.S. §2503 are part of the principal claim and must be determined as part of that claim. Consequently, a trial court may act on a motion for fees only within 30 days from the final judgment. The Superior Court based its ruling on its prior rulings in *First National Bank of Northeast*

---

2. The case law construes this provision to mean that a common pleas court may modify or rescind a final judgment only within 30 days of its entry. *Orie v. Stone,* 411 Pa. Super. 481, 601 A.2d 1268 (1992).

*v. Gooslin,* 399 Pa. Super. 496, 582 A.2d 1054 (1990), and *Freidenbloom v. Weyant,* 814 A.2d 1253 (Pa. Super. 2003), where the Superior Court ruled that a cause of action for attorney fees cannot exist independent of the principal claim and therefore the judgment disposing of the principal claim is the final judgment for purposes of appeal.

The Supreme Court rejected the reasoning of the Superior Court that Birmingham's motion for counsel fees and other sanctions could not be considered because of the finality of the June 27, 2002 judgment.

The court's analysis began with the language of 42 Pa.C.S. §2505(3) which permits the award of counsel fees if a garnishee "is found to have in his possession or control no indebtedness due to or other property of the debtor." Under this provision, counsel fees may be awarded only if the garnishee is the prevailing party. A garnishee cannot be the prevailing party until a final determination has been made that the garnishee has "no indebtedness due to or other property of the debtor." This means that Birmingham's status as the prevailing party was not perfected until the time for appeal from the June 27, 2002 order expired. This, in turn, means that the June 27, 2002 date cannot be the date of a judgment disposing of the garnishee's request for counsel fees because it is the first day on which the garnishee can raise a claim for counsel fees. Thus, the final order for purposes of awarding counsel fees based on section 2503(3) is the date of a court order disposing of the motion for counsel fees. The court said: "We agree that the judgment entered in June 27, 2002 was the final judgment in the underlying garnishment action, but we cannot say it was the final

order with regard to the motion for fees." *Miller Electric, supra,* 907 A.2d at 1056.

The present case presents the same situation. Celin/Metropolitan could not file a motion for sanctions until they had reviewed the written statement upon which the certificate of merit was based. Plaintiffs were not obligated to furnish the written statement until 30 days of the written request or 30 days of resolution of all claims against all professionals, whichever is later. Thus, it was not possible for Dr. Celin to even file a motion for sanctions based on Rule 1042.7 within 30 days of the entry of the final judgment (*i.e.,* the voluntary discontinuance of the case).

Furthermore, the present case, in comparison to *De-Weese,* presents a more compelling justification for allowing post-judgment proceedings to extend beyond the 30-day period after the voluntary discontinuance. In the present case, Celin/Metropolitan is not seeking to alter or amend the judgment. To the contrary, Celin/Metropolitan is seeking sanctions against a person who is not a party to the lawsuit, namely counsel for the plaintiffs. Also, the claim for relief is not based on the merits—or lack thereof—of the claims and defenses raised in the underlying action. The right to relief is based on an unrelated issue: Did plaintiffs' counsel obtain a written statement from an appropriate licensed professional that (i) there exists a reasonable probability that the care, skill, knowledge, or experience exhibited in the treatment, practice, or work that is the subject of the complaint fell outside acceptable professional standards and (ii) such conduct was a cause of bringing about the harm?

For these reasons, I will consider the merits of Celin/ Metropolitan's motion to impose sanctions.

In their complaint, the Koppels allege that on October 17, 2000, Dr. Celin, upon referral of the other two defendant-physicians, examined plaintiff-wife with respect to thyroid nodules. Three years later, she was diagnosed with papillary thyroid cancer. Plaintiffs' claim against Dr. Celin is that he failed to diagnose the existence of thyroid cancer when plaintiff-wife exhibited all signs, symptoms, and conditions of this disease.

The certificates of merit which Attorney Pietrandrea filed as to Dr. Celin and Metropolitan Ear, Nose and Throat were based on a March 23, 2005 report of Qin Eisler, M.D., Ph.D. She lists her specialty as "Medical research and analysis." Prior to filing the certificate of merit, Attorney Pietrandrea received Dr. Eisler's CV. The complete CV contains the following information:

Qin Eisler, M.D., Ph.D.

Medical Research and Analysis

### EDUCATION AND PRACTICES:

1979-1984  Medical degree and internship. Bengbu Medical School, China

1984-1987  Master degree in medical biology, the Chinese Academy of Preventive Medicine, Beijing.

1988-1990  Ph.D. in medical biology, the Chinese Academy of Preventive Medicine, Beijing.

| 1991 | Post-doctoral program, the University of Montpellier and the University of Perpignan, France. |
| 1992-1994 | Associate professor/researcher, the Chinese Academy of Preventive Medicine, Beijing. |
| 1995- | Residing in U.S., studying cases on trial or under investigation through the various programs of *Court TV.* |
| 2002- | Medical-legal consulting. |

Pa.R.C.P. 1042.3 requires a plaintiff's attorney to sign and file a certificate of merit stating that "an appropriate licensed professional" has filed a written statement. The note to Rule 1042.3(a)(1) requires the person filing the statement "be an expert with sufficient education, training, knowledge and experience to provide credible, competent testimony, or stated another way, the expert who supplies the statement must have qualifications such that the trial court would find them sufficient to allow that expert to testify at trial. For example, in a medical professional liability action against a physician, the expert . . . should meet the qualifications set forth in section 512 of the Medical Care Availability and Reduction of Error (MCARE) Act, 40 P.S. §1303.512." Under this Act, the expert must possess an unrestricted physician's license to practice in at least one state or the District of Columbia and be engaged in (or retired within the past five years) from active clinical practice or teaching. In addition, the expert must practice in the same subspecialty (or in a subspecialty which has a substantially similar standard of care) as the defendant-physician.

Dr. Eisler's resume states that she obtained a medical degree in China in 1984 and that she has been residing in the United States since 1995. For the seven-year period from 1995 to 2002, the only activity listed in the CV is "studying cases on trial or under investigation through the various programs of *Court TV*." From 2002, the only activity listed is medical-legal consulting. There is no information in the resume which suggests that she has engaged in the practice of medicine since 1995. Furthermore, there is no information which suggests that she has a license to practice medicine in the United States.[3]

Assuming that Dr. Eisler has some field of expertise, it is not listed in the CV and any attorney reviewing the CV would have had absolutely no reason to believe that Dr. Eisler practiced in the same or a related field as the defendant-physician.

It would be impossible for any attorney who reviewed the CV and the Rules of Civil Procedure governing certificates of merit (Pa.R.C.P. 1042.1-1042.8) to conclude in good faith that a certificate of merit may be based on any report issued by Dr. Eisler.

Furthermore, even if Dr. Eisler was qualified to issue a report, the case study report that she issued does not meet either requirement of Rule 1042.3. It does not state that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited by Dr. Celin in the treatment, practice or work that is the subject of

_____

3. The evidence in these proceedings has established that Dr. Eisler never had a license to practice in the United States.

the complaint fell outside acceptable professional standards. In addition, it does not state that such conduct was a cause in bringing about the harm.

Dr. Eisler described the treatment furnished by Dr. Celin at page 3 of the report:

"(1) Upon referral of Dr. Case, Dr. Scott Celin saw the patient, apparently as a consultant on 10/09/2000. Dr. Celin belongs to Metropolitan Ear, Nose and Throat Associates. It does not appear that Dr. Celin is a specialist in endocrinology or oncology, although Dr. Celin may be clinically involved with thyroid gland which is located in the neck area.

"(2) Dr. Celin believed that the patient 'appears to have a stable thyroid exam by ultrasound presently has no physical exam abnormalities or symptoms to suggest malignancy.' Dr. Celin felt that the right thyroid nodule was essentially unchanged and needs no further workup presently, and it was unnecessary to perform a needle biopsy despite of the suggestion made by the radiologist who performed the ultrasound (probably on 09/20-21/2000, Passavant Hospital, see Table I)."

The only opinions that she rendered are set forth at pages 9, 11 and 12 of the report:

"(4) Thyroid papillary carcinoma . . .

"Dr. Case did refer the patient to Dr. Celin, an ear, nose and throat doctor who may be not identified as an endocrinologist or an oncologist and had a partially incorrect opinion in this case. . . .

"Re: Dr. Scott Celin

"An ear, nose and throat doctor. If Dr. Celin was identified as an specialist but irrelevant to this case, his opinion would be considered as a *second* opinion, in which he recommended to monitor the suspicious thyroid nodule by ultrasound only. The patient went to see him once(?) His professional liability in this case could be argued.

"Conclusions . . .

"Dr. Scott Celin's professional liability in the case could be argued."

No attorney could in good faith conclude that this report constitutes a statement that there exists a reasonable probability that the care, skill, or knowledge exercised by Dr. Celin fell outside professional standards. Furthermore, Dr. Eisler's report never discusses whether the professional liability that "could be argued" was a cause in bringing about plaintiff's harm.[4]

The filing of a certificate of merit without a statement of an appropriate licensed professional completely undermines the purpose of the rule that a professional not be required to defend a case that has not been favorably reviewed by an appropriate licensed professional. It would have been possible for the Supreme Court to draft a rule requiring the statement to be attached to the certificate of merit. Such a requirement was not imposed because the Supreme Court assumed that lawyers can be

---

4. In his deposition, Attorney Pietrandrea testified that after talking to Dr. Eisler he believed that she was a licensed practicing physician but that she had no specialty. He also testified that he now knows that she did not have a license to practice medicine in the United States. (T. 39-40.)

trusted to pursue only cases for which they have obtained a statement required under Rule 1042.3. Preservation of the integrity of the rule requires that significant sanctions be imposed where there is a flagrant disregard of the requirements of this rule.

I now consider the specific sanctions that should be imposed based on my finding of a flagrant violation of Rule 1042.3. Under Rule 1042.7(b), a court may impose "appropriate sanctions, including sanctions provided for in Rule 1023.4." The sanctions that may be imposed under Pa.R.C.P. 1023.4 include reasonable attorneys' fees, other expenses, and ordering payment of a penalty into the court.[5]

Because Dr. Celin and his medical group should never have been forced to defend this case, I am awarding the counsel fees and costs which the insurance carrier for Dr. Celin/Metropolitan incurred of $6,967.94.

I am also awarding attorneys' fees and costs not to exceed $2,000 that Dr. Celin has incurred in pursuing this motion for sanctions.

The evidence supports a finding that Dr. Celin made increased insurance premiums in the amount of $8,277 because of this litigation. I am requiring the payment of these premiums because the premium would not have

---

5. The difference between imposing sanctions under Rule 1023.4 and Rule 1042.7 is that the sanctions under Rule 1023.4 are limited to those specifically described in the rule while Rule 1042.7(b) provides that a court may impose whatever sanctions it deems to be appropriate, including those provided in Rule 1023.4.

been increased if the certificate of merit had not been filed.[6]

Finally, I am requiring Attorney Pietrandrea to make a donation of $2,000 to Operation Smile (http://www. operationsmile.org).

## II. *McNEFF v. MEDI-HELP*—GD03-24486

A jury entered a verdict in favor of Dr. Janicijevic and his medical corporation on November 27, 2006. Plaintiff did not file a motion for post-trial relief. Pursuant to a praecipe filed by Dr. Janicijevic, the prothonotary entered a judgment against the plaintiff and in favor of Dr. Janicijevic on December 5, 2006. On the same date, counsel for Dr. Janicijevic formally requested plaintiff to provide the written statement from a licensed physician that allegedly formed the basis for counsel's certificate of merit. Plaintiff refused to provide a copy of the statement. On May 11, 2007, defendant filed a motion to compel.[7] On July 21, 2007, I denied the motion. My court order denying the motion included a statement that defendant had obtained a final judgment through the filing of a praecipe for entry of a judgment on December 5, 2006.

---

6. I find to be credible the testimony of Charles Parker, Director of Underwriting Compliance for PMSLIC Insurance Company, that the 2006 premium increased an additional $8,277 because of the *Koppel* lawsuit. (5/17/2007 deposition T. 14, 49-50.) While the premium would not have increased if Dr. Celin had not also been involved in a prior incident, the direct cause of the $8,277 increase was the *Koppel* litigation.

7. It appears that plaintiff's attorney refused to furnish the statement to defendant's attorney only because he believed that he was not required to do so. At oral argument, he was prepared to have me read the statement.

I entered my court order denying the discovery request because there was no reason for Dr. Janicijevic to file a praecipe for the entry of a judgment based on the verdict on December 5, 2006. If he intended to pursue sanctions, he should have delayed taking steps for the entry of a final judgment until after resolution of any requests for sanctions sought pursuant to Rule 1042.7.

Prior to the entry of my July 21, 2007 court order, the parties did not cite and I did not consider *Miller Electric Company v. DeWeese, supra.* In *Miller Electric,* the garnishee filed a praecipe to enter a judgment on the verdict while its request for counsel fees was pending. In that case, there was no reason for the garnishee to praecipe for judgment until its ancillary motion was decided. Consequently, I find that *Miller Electric* is controlling and that I erred in denying relief on the ground that Dr. Janicijevic entered judgment even though he intended to seek sanctions under Rule 1042.7.

I also denied Dr. Janicijevic's motion to compel the production of the written statement on which the certificate of merit was based because plaintiff had included an expert report in his pretrial statement and had at trial presented expert testimony that was sufficient for plaintiff's case to proceed to a jury. I saw no need for the court to become involved in a situation in which an appropriate licensed professional had offered testimony that the defendant-physician's care, skill, or knowledge exercised in the treatment of the patient fell outside acceptable professional standards and was a cause in bringing about the patient's harm.

However, upon further review, I conclude that my ruling is inconsistent with the provisions of Rule 1042.7(a). This rule explicitly provides that the plaintiff shall provide a written statement upon which the certificate of merit is based upon the written request of a defendant who is dismissed from the case through "verdict."

I cannot ignore the language of the rule on the ground this is an unintentional result. A literal reading of Rule 1042.7(a) is consistent with the purpose of the requirement that a plaintiff obtain a written statement of an appropriate licensed professional before the plaintiff may proceed with a professional liability action. See *Womer v. Hilliker,* 589 Pa. 256, 266-67, 908 A.2d 269, 275-76 (2006), where the court said that nothing should transpire in a medical malpractice action until the plaintiff has obtained a certificate of merit supporting the allegations in the plaintiff's complaint.

## ORDER

On November 20, 2007, upon consideration of the motion for sanctions of Scott Celin M.D., and Metropolitan Ear, Nose and Throat Associates, it is hereby ordered that within ninety 90 days:

(1) Attorney Peter J. Pietrandrea shall pay counsel fees and costs incurred in the defense of the underlying lawsuit in the amount of $6,967.94;

(2) Attorney Pietrandrea shall pay counsel fees and costs that Dr. Celin incurred in pursuing his motion for sanctions in an amount not to exceed $2,000;

(3) Attorney Pietrandrea shall pay Dr. Celin $8,277 for increased insurance premium payments; and

(4) Attorney Pietrandrea shall donate the sum of $2,000 to Operation Smile and shall file an affidavit of compliance.

## ORDER

On November 20, 2007, upon consideration of defendants' statement of errors complained of on appeal, it is recommended that the Pennsylvania Superior Court reverse my ruling and remand the matter to this court in order that this court may compel plaintiff to furnish the written statement upon which plaintiff's certificate of merit is based.